IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOY TECHNOLOGIES INC. and       )
JOY MM DELAWARE INC.,           )
                                )
          Plaintiffs,           )
                                )
     v.                         )   Civil Action No. 12-0144
                                )
NORTH AMERICAN REBUILD          )
CO., INC.,                      )
                                )
          Defendant.            )

MEMORANDUM

Gary L. Lancaster                           May 15, 2012
Chief Judge.

This is a trademark infringement case. Joy
Technologies Inc. and Joy MM Delaware Inc. (collectively, "Joy")
accuse North American Rebuild Co., Inc. ("NARCO") of infringing
two of its federally registered trademarks by placing the Joy
name on pieces of rebuilt mining machinery. Joy seeks to enjoin
NARCO from using its trademarks, and to recover monetary damages
and attorneys' fees. NARCO has filed a motion to dismiss
arguing that Joy cannot pursue this litigation due to the
preclusive effect of an earlier filed case. [doc. no. 14].

For the reasons set forth below, we grant NARCO's
motion, and dismiss this case, with prejudice.

I.     FACTUAL BACKGROUND

Joy is the world's leading manufacturer of equipment used in underground coal mining. NARCO is engaged in the fabrication, reconditioning, and rebuilding of mining equipment, as well as the sale and service of such equipment. NARCO often rebuilds and resells mining machinery that was originally manufactured by Joy.

Joy first accused NARCO of infringing its trademarks by including the Joy name on rebuilt mining machinery in a lawsuit filed in 2005. Joy v. NARCO, 05-1066 (W.D. Pa.) ("Joy I"). In Joy I, Joy alleged, among other things, that "members of the underground mining equipment industry who encounter the Defendant's products will believe, mistakenly, that Defendant's products originate with, or are sponsored, endorsed, approved by, or in some way connected with the Plaintiffs" [Joy I, doc. no. 1 ("Joy I Complaint") at ¶ 28] and that NARCO "…has no permission, authorization, approval, or consent from the Plaintiffs to use the JOY Trademarks in association with the Defendant's goods." [Joy I Complaint at ¶ 29]. Joy also contended in the Joy I Complaint that "NARCO's conduct is likely to cause additional confusion, mistake, and deception as to the source and sponsorship of its goods and services such that consumers have believed and are likely to continue to believe, contrary to fact, that Defendant is associated or affiliated

2

with or authorized by Joy, all to Joy's irreparable loss and damage." [Id. at ¶ 18].

Joy asserted claims of trademark infringement, unfair competition, and dilution under the Lanham Act and Pennsylvania law in the Joy I Complaint. Joy also brought a statutory claim for identity theft under Pennsylvania law.

In Joy I, Joy sought an order enjoining NARCO from, among other things, "[a]ny further infringing use of" Joy's trademarks, "[p]assing off their products and services as originating with or sponsored or authorized by Joy," and "[p]lacing or maintaining any of the Joy trademarks on… Joy original equipment that has been substantially modified." [Id. at p. 8]. In addition, Joy sought an order directing NARCO to place a notice on "…any Joy original equipment that has been substantially modified by Defendant stating that… Joy is not connected with or responsible for such modified equipment." [Id.].

About a year after it was filed, Joy I was resolved via the parties execution of a Settlement Agreement and entry of a Stipulated Order for Permanent Injunction that incorporated its terms. [Joy I, doc. no. 31 (the "Permanent Injunction Order")]. The Permanent Injunction Order was negotiated by the parties and submitted to the Court for approval. Both the Permanent Injunction Order and the Settlement Agreement reflect

that the parties agreed to settle all claims asserted in, and arising out of the subject matter of, Joy I, and to dismiss that case in its entirety, with prejudice.

The Permanent Injunction Order explicitly defines the scope of the parties' settlement by reference to the claims asserted in the Joy I Complaint. For instance, the preamble of the Permanent Injunction Order reads that: "This matter, having come for consideration upon the complaint of the plaintiffs… for trademark infringement, unfair competition and state-law identity theft, and the parties having stipulated to… dismissal of the above-captioned action…" [Id. at p. 1]. Moreover, the Permanent Injunction Order closes by stating that "…all claims asserted by Joy against NARCO, as set forth in the Complaint in the above-captioned action, shall be dismissed with prejudice." [Id. at ¶ 13].

The Settlement Agreement further indicates that the parties were agreeing to settle not only all claims actually asserted in Joy I, but also all claims related to the subject matter of the Joy I Complaint. For example, the preamble to the Settlement Agreement reads: "WHEREAS, the parties to this Settlement Agreement desire to compromise and settle all disputes and differences relating to all claims asserted in [Joy I]." [Joy I, doc. no. 32-1 (the "Settlement Agreement") at p. 1]. Furthermore, Joy covenanted in that Agreement not to sue

4

NARCO "…regarding the causes of action and claims that were asserted in [Joy I] and/or regarding any and all other claims of liability or causes of action arising out of the subject matter of [Joy I]." [Id. at ¶ 2.1].

We retained jurisdiction to enforce the terms of the parties' settlement. [Permanent Injunction Order at ¶ 14]. In August of 2011, Joy invoked that jurisdiction by filing a motion for civil contempt [Joy I, doc. no. 32]. In it, Joy accused NARCO of violating paragraphs 4(a) and 4(b)[1] of the Permanent Injunction Order by using Joy's name on XP Tags, which are attached to the numerous component parts found on a piece of mining machinery.[2] [Id. at ¶ 25]. Following a hearing, we denied that motion, and found that "…Joy has failed to prove by clear and convincing evidence that NARCO has violated any provision of the permanent injunction order by reproducing and replacing illegible XP tags on Joy component parts during NARCO's rebuild process" because "…the Permanent Injunction Order does not prohibit NARCO's replacement of illegible XP Tags." [Joy I, doc. no. 51 ("Civil Contempt Opinion") at pp. 7, 13, 14].

---

[1] Joy also accused NARCO of violating paragraph 10 of the Permanent Injunction Order by painting rebuilt equipment orange, Joy's signature color, but abandoned that allegation at the contempt hearing.

[2] As set forth in more detail in our Civil Contempt Opinion, XP Tags are issued by the Mine Safety and Health Administration ("MSHA") to certify that a component part included on a piece of mining machinery complies with its regulations. 2-G Tags indicate that MSHA has approved an entire piece of mining machinery. [Joy I, doc. no. 51 ("Civil Contempt Opinion") at pp. 4-5].

5

In reaching this conclusion, we studied paragraph 4(a)'s prohibition on the use of Joy's trademarks, and paragraph 4(b)'s prohibition on passing off NARCO's products as originating with Joy, as well as their respective exclusions. [Id. at p. 8]. We observed that while none of those exclusions referred to XP Tags, by name, several specifically acknowledged that the Joy name would still be found on mining equipment after it had been rebuilt by NARCO, including on the rebuilt equipment's component parts. [Id. at pp. 9-11]. We also observed that there could be no possible passing off because NARCO was admittedly attaching its own 2-G Tags and company name to the rebuilt shuttle cars to indicate the source of the equipment, and that the Joy name on the XP Tags, which were no bigger than two postage stamps, was about one sixteenth of an inch in height. [Id. at pp. 5, 13-14]. After reviewing the entirety of the Permanent Injunction Order, including paragraphs 5 and 8, we concluded that Joy had failed to establish that the Permanent Injunction Order prevented NARCO from replacing illegible XP Tags. [Id. at p. 10].

Joy appealed that ruling. Joy v. NARCO, No. 12-1380 (3d Cir. filed February 15, 2012). That appeal is pending before the Court of Appeals for the Third Circuit. The parties participated in mediation before that court, which was unsuccessful, and the parties advised this Court that they are

6

expecting a briefing schedule to issue soon.

About four months after we issued our Civil Contempt Opinion, and before the appeal in Joy I was even docketed in the proper court, Joy filed the instant lawsuit. Joy v. NARCO, 12-0144 (W.D. Pa.) ("Joy II"). Joy readily acknowledges, and even summarizes, the recent contempt proceedings in Joy I in its Joy II Complaint, but contends that this second lawsuit is necessary and appropriate "[b]ecause the Court did not address whether NARCO's use of JOY trademarks on rebuilt, or refurbished or reconditioned components violated [paragraphs 5 or 8 of the Permanent Injunction Order]." [Joy II, doc. no. 1 ("Joy II Complaint") at pp. 1-2]. In the Joy II Complaint, Joy accuses NARCO of infringing its trademarks by including the Joy name on rebuilt mining machinery. [Joy II Complaint at ¶ 15]. Yet, according to Joy, Joy II is not related to, or barred by, Joy I because Joy II targets NARCO's trademark infringement on XP Tags, while Joy I targets NARCO's trademark infringement on 2-G Tags.

However, the similarities between the factual allegations made in the Joy I and Joy II Complaints are striking and inescapable. Both complaints accuse NARCO of infringing the same two federally registered trademarks. [Joy I Complaint at ¶¶ 8, 9, 13 and Joy II Complaint at ¶¶ 7, 8, 9, 15]. Both complaints indicate that NARCO is in the business of

reconditioning and rebuilding shuttle cars, although the Complaint in Joy II adds a further, specific reference to the "rebuilding, repair, refurbishing and/or reconditioning of component parts thereof." [Joy I Complaint at ¶ 12 and Joy II Complaint at ¶ 14]. Where the Joy I Complaint refers generally to NARCO's misuse of Joy's trademarks on shuttle cars, the Joy II Complaint contains more specific allegations directed to the use of Joy's trademarks on component parts that are included on those shuttle cars. [e.g., Joy I Complaint at ¶ 13 and Joy II Complaint at ¶ 15].

Likewise, the legal claims asserted in the Joy I and Joy II Complaints are virtually indistinguishable. Both complaints accuse NARCO of trademark infringement and dilution, and unfair competition in violation of the Lanham Act and Pennsylvania law as a result of including Joy's name on shuttle cars after they are rebuilt by NARCO. [Joy I Complaint at ¶¶ 23-39 and Joy II Complaint at ¶¶ 49-74]. Although the Complaint in Joy II includes a count entitled "False Representation as to MSHA Certification," it is no more than a common law, trademark-based false advertising claim, equivalent to the causes of action asserted earlier in the complaint.[3]

---

[3] To the extent Joy contends that this claim is directed to enforcement of MSHA regulations, Joy has made no assertion that it has standing to assert such regulatory violations, making the claim amenable to dismissal on that ground alone.

8

Finally, Joy seeks the same relief in both complaints. Joy requests an injunction against NARCO's continued infringing use of its trademarks in both cases. In the prayer for relief in the Joy II Complaint, Joy simply replaces the words "products" or "equipment" with a more specific reference to "component parts" or "components." [Joy I Complaint at ¶ A.3-4 and Joy II Complaint at ¶ A.3-4]. However, the objective of both lawsuits is clearly the same. Joy is trying to force NARCO to remove Joy's trademarks from rebuilt shuttle cars. Joy also seeks treble damages and attorneys' fees in both lawsuits. Notably, Joy contends that the damages in Joy II began to accrue on the very day that Joy I was voluntarily dismissed.

## II.    LEGAL AUTHORITY

### A.    Motion to Dismiss

"To survive a motion to dismiss…, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When a court evaluates a motion to dismiss, "the factual and legal elements of a claim should be separated." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the

complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11; see also Iqbal, 556 U.S. at 678. When considering a motion to dismiss, we must view all facts, and reasonable inferences based on those facts, in the light most favorable to the non-moving party. Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 325 (3d Cir. 2001).

## B. *Res Judicata*

The defense of claim preclusion, or *res judicata*, may be raised and adjudicated on a motion to dismiss. Toscano v. Connecticut Gen. Life Ins. Co., 288 Fed.Appx. 36, 37-38 (3d Cir. 2008) (citing Connelly Found. v. Sch. Dist. of Haverford Twp., 461 F.2d 495, 496 (3d Cir. 1972)). A court may take judicial notice of the record from the previous court proceeding, and, as always, may consider all documents attached to and referred to in the complaint. Id. at 38 (citing Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n.3 (3d Cir. 1988)). The party seeking dismissal based on claim preclusion has the burden of establishing that: (1) there was a final judgment on the merits in a prior suit; (2) the same parties or their privies were involved in the prior suit; and (3) the subsequent suit is based on the same cause of action. Morgan v. Covington Twp., 648 F.3d 172, 177 (3d Cir. 2011); Churchill v. Star Enterprises, 183 F.3d 184, 194 (3d Cir. 1999).

*Res judicata* precludes a party from relitigating not only claims that were actually brought in the first action, but also claims that arise from the same underlying transaction or events and, as a result, could have been brought in the first action. Morgan, 648 F.3d at 177 (citing In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008)); see also, Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 173 (3d Cir. 2009); CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir. 1999); Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 964 (3d Cir. 1991) (citing cases). Newly discovered evidence does not prevent the application of *res judicata* to claims that could have been brought in the first action, "unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence." Haefner v. N. Cornwall Twp., 40 Fed.Appx. 656, 658 (3d Cir. 2002).

Simply put, "*[r]es judicata…* bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." Duhaney v. Attorney Gen. of the United States, 621 F.3d 340, 347 (3d Cir. 2010). The doctrine promotes judicial economy by protecting defendants from having to defend against multiple identical, or nearly identical, lawsuits, and by protecting courts from having to expend judicial resources on piecemeal litigation. Morgan, 648 F.3d at 177; Churchill, 183 F.3d at 194.

## C. Judicial Estoppel

Judicial estoppel is an equitable, "judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996). The doctrine exists "…to protect the integrity of the judicial process… by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (internal quotations and citations omitted).

In order to determine whether application of the doctrine is justified we are to consider: (1) whether the two positions are irreconcilably inconsistent; (2) whether the party changed his position in bad faith, i.e., with the intent to play fast and loose with the court; and (3) whether a lesser sanction would remedy the damage done. In re Kane, 628 F.3d 631, 638-39 (3d Cir. 2010) (citing Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319-20 (3d Cir. 2003)).

## D. Settlement Agreement

A settlement agreement is a contract that must be interpreted and enforced in accordance with the principles of contract law. Enterprise Energy Corp. v. United States, 50 F.3d

233, 238 (3d Cir. 1995) (citing cases). Pennsylvania law[4] assumes that the intent of the parties to a written contract is "contained in the writing itself." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 613 (3d Cir. 1995) (quoting Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994)). As such, where a contract is clear and unambiguous, a court is to look only to the express language of the agreement to determine the parties' intent. Atkinson v. LaFayette College, 460 F.3d 447, 452 (3d Cir. 2006). Extrinsic evidence is inadmissible to explain or vary the terms of a contract that is determined to be unambiguous and to represent the entire agreement between the parties. Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436-37 (Pa. 2004).

## III.   DISCUSSION

### A.   *Res Judicata*

NARCO has moved to dismiss the Complaint filed in Joy II on the ground that it is barred by the doctrine of *res judicata*. In order to establish this affirmative defense, NARCO must prove three things: (1) that Joy I was resolved by a final judgment on the merits; (2) that the same parties are involved in both Joy I and Joy II; and (3) that Joy II is based on the

---

[4] No party disputes that Pennsylvania law would apply to this action.

same cause of action as was Joy I. The first and second factors are not in dispute. The parties in Joy I and Joy II are identical, and judicially approved settlement agreements are considered final judgments on the merits for purposes of *res judicata*. Toscano, 288 Fed.Appx. at 37-38.

However, the parties dispute whether the third factor has been met. In assessing this factor we are to take a broad view of what constitutes the same cause of action and examine the "essential similarity of the underlying events giving rise to the various legal claims." Elkadrawy, 584 F.3d at 173 (quoting Davis v. U.S. Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982)); Churchill, 183 F.3d at 194; Athlone, 746 F.2d at 983-84. Specifically, courts look at: (1) whether the acts complained of and the demand for relief are the same; (2) whether the material facts alleged are the same; (3) whether the theory of recovery is the same; and (4) whether witnesses and documentation necessary to prove the allegations are the same. Elkadrawy, 584 F.3d at 173 (citing United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984)); Sheridan v. NGK Metals Corp., 609 F.3d 239, 261 (3d Cir. 2010). Upon examination of these factors, we conclude that Joy II is based on the same cause of action as Joy I. As such, *res judicata* applies.

As set forth in detail above, the facts alleged, acts complained of, demand for relief, and theories of recovery in

14

Joy II are nearly identical to those in Joy I. See, Section I at pp. 7-9. The Complaint in Joy II merely replaces general terms, such as "product" or "equipment," with the term "component parts," while making a point to refer explicitly and repeatedly to XP Tags by name. However, the core of the cases is the same, i.e., Joy wants NARCO to stop using its name on rebuilt shuttle cars. The exact same underlying events give rise to Joy II as gave rise to Joy I, namely, the appearance of Joy's trademarks on shuttle cars rebuilt by NARCO. It follows that the witnesses and documentation would be nearly identical.

The similarity of the two cases can best be demonstrated by way of analogy. While Joy II objects to the use of trademarks on the owner's manual, steering wheel, dashboard, and floor mats of a car, Joy I objects to the use of same trademarks on the trunk and the hood of the same car. Other than the location of the tag bearing the Joy trademark, the cases are identical. Avoiding such piecemeal litigation is the very purpose behind the *res judicata* doctrine. Based on our review of the Complaints in Joy I and Joy II, and our consideration of the factors set forth above, we conclude that Joy II is based on the same cause of action as Joy I. In fact, we find that the claims made in Joy II are actually included within, and encompassed by, the claims asserted and settled in Joy I. Accordingly, we will apply *res judicata* to bar the

second action.

Joy, of course, disagrees, and argues not only that the claims asserted in Joy II do not fall within the claims asserted in Joy I, but also that it could not have included the Joy II claims in Joy I because Joy only learned of NARCO's use of its name on XP Tags in May of 2011. As Joy has made no argument that NARCO fraudulently concealed evidence, Joy can only prevail on its contention that Joy II is based on new evidence if it can demonstrate that it could not have discovered that NARCO was replacing illegible XP Tags through the exercise of due diligence. Haefner, 40 Fed.Appx. at 658. Joy has made no such showing. Moreover, the record in Joy I independently undercuts Joy's contention.

As an initial matter, in order to file the Complaint in Joy I, Joy's attorneys had to certify that they made a reasonable inquiry into the facts alleged therein. FED. R. CIV. P. 11(b). That inquiry, presumably, entailed a review of or knowledge about how NARCO's shuttle cars looked after the rebuild process. 2-G Tags and XP Tags appear on the same pieces of equipment, just in different locations. As such, Joy's contention that it did not know, and could not have known, that NARCO was forging XP Tags when it filed Joy I begs the question of how it is that Joy knew that NARCO was improperly using 2-G Tags at that time.

However, putting aside this issue, Joy I was not settled until a year after it was filed. During this time, Joy was entitled to discovery to investigate NARCO's use of its trademarks. In fact, Joy did participate in discovery including filing two motions to compel. [Joy I, doc. nos. 14, 23]. The parties agreed to settle Joy I while the second motion to compel was pending, and therefore Joy sought no ruling from the Court on that motion. However, regardless of whether the information was procured through discovery, the exercise of due diligence obligated Joy to investigate all of NARCO's infringing trademark uses prior to agreeing to settle and dismiss Joy I. To the extent that Joy failed to do so does not now make res judicata inapplicable.[5]

Finally, the proceedings relating to Joy's motion for civil contempt undercut Joy's contention that it could not have known about NARCO's replacement of XP Tags before filing Joy II. In resolving Joy's contempt motion, we noted that NARCO has always been in the business of rebuilding mining equipment, we found that replacement of illegible XP Tags was common in the rebuild industry, and we observed that Joy made no effort to

---

[5] Joy's obligation to investigate the facts prior to settling Joy I similarly forecloses Joy's alternative argument that the only conclusion that can possibly follow from our denial of its motion for civil contempt in Joy I is that a new lawsuit must be allowed in order to specifically address NARCO's XP Tag infringements. If res judicata applies, then the doctrine operates to prevent Joy from doing exactly that. Any failure to investigate the full scope of NARCO's misuse of Joy's trademarks during the course of Joy I, and any resultant errors or deficiencies in drafting found in the settlement documents and identified in our Civil Contempt Opinion, are without consequence to the motion currently before this Court.

17

establish that either NARCO's practices differed from industry practice or have changed over time. [Joy I Civil Contempt Opinion at pp. 7, 8, and 13]. In fact, NARCO acknowledged at the contempt hearing that it had been replacing XP Tags since at least 2006 by admitting specimens of such replacement tags into evidence. [Joy I, Sep. 15, 2011 Hear., Def. Ex. J].

In addition, Joy itself even acknowledges that NARCO was using replacement XP Tags while Joy I was pending by alleging in the Joy II Complaint that such tags likely appear on over 450 shuttle cars that were refurbished between the day Joy I was dismissed and the day of the contempt hearing. [Joy II Complaint at ¶¶ 41-42]. It is not plausible, and Joy has failed to offer any indication, that NARCO was using Joy's name on XP Tags on the day that Joy I was settled, but not before. Thus, the contempt proceedings also demonstrate that, through the exercise of due diligence, Joy could have discovered NARCO's replacement of XP Tags.

Because NARCO has established that Joy II is based on the same cause of action as Joy I, and because Joy is unable to establish that it could not have discovered NARCO's XP Tag replacement through the exercise of due care, we grant NARCO's motion to dismiss on the basis of *res judicata.*

## B. Judicial Estoppel

Alternatively, we find that the equitable doctrine of judicial estoppel would justify dismissing the complaint in Joy II. Judicial estoppel applies where: (1) a party takes two positions that are irreconcilably inconsistent; (2) the party changed his position in bad faith, i.e., with the intent to play fast and loose with the court; and (3) a lesser sanction would not remedy the damage done. In re Kane, 628 F.3d at 638. All three requirements have been met in this case.

Joy has taken inconsistent positions in the course of litigating Joy I and Joy II. When filing the motion for civil contempt, Joy contended that NARCO's replacement of illegible XP Tags violated paragraphs 4(a) and 4(b) of the Permanent Injunction Order. [Joy I, doc. no. 32 at ¶ 25]. After we ruled that Joy had failed to prove that contention, Joy filed a second lawsuit in which it contended that NARCO's replacement of illegible XP Tags violated paragraphs 5 and 8 of that Order. [Joy II Complaint at p. 2]. Yet, at the same time, Joy also argued that the claims asserted in Joy II were not the same as, and did not arise out of the same subject matter as, Joy I. [Joy II Complaint at p. 2; Joy I Settlement Agreement at ¶ 2.1].

These positions are contradictory, and improper. As an initial matter, Joy had an obligation to bring all allegedly violated paragraphs of the Permanent Injunction Order to the

Court's attention when it filed its motion for civil contempt. It is improper to argue in a contempt motion that NARCO violated paragraph 4, and then, after losing, argue in a new lawsuit that paragraphs 5 and 8 were actually the provisions violated. Moreover, it is inherently inconsistent for Joy to argue in Joy II that NARCO has violated paragraphs 5 and 8 of the Permanent Injunction Order entered in Joy I, while at the same time arguing that Joy II is substantively unrelated to and separate from Joy I. It is impossible to reconcile Joy's factual and legal positions. The first factor in the judicial estoppel analysis has been satisfied under these circumstances.

We find that Joy has changed its position in bad faith. Notably, Joy's appeal from our Civil Contempt Opinion is still pending. Yet, instead of awaiting an opportunity to convince the appellate court that we erred in finding that NARCO's replacement of illegible XP Tags did not violate the Permanent Injunction Order, Joy filed a new lawsuit in order to obtain a second judicial look at the same allegedly illicit conduct before that appeal had even been docketed at the Court of Appeals for the Third Circuit. Such activity demonstrates an intent to play fast and loose with the court and reflects the epitome of a party deliberately changing its position according to the exigencies of the moment. Judicial estoppel provides us with the equitable power to prevent such behavior. Finally, we

conclude that no lesser sanction could remedy the harm done. The harm of an inconsistent, duplicative second lawsuit filed in bad faith can only be avoided by dismissal, with prejudice, of that second action.

Because all three factors relevant to the judicial estoppel analysis have been satisfied here, we find that the equitable doctrine provides an alternative basis on which to dismiss the Complaint in Joy II.

### C. Settlement Agreement

Lastly, we also find that the Settlement Agreement signed in Joy I forecloses Joy's pursuit of the claims alleged in Joy II. We may consider the terms of the Settlement Agreement in ruling on a motion to dismiss because Joy refers to it explicitly in the Joy II Complaint. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citing cases); Pension Benefit Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

One provision in that contract is that Joy agreed not to bring suit against NARCO "… regarding the causes of action and claims that were asserted in [Joy I] and/or regarding any and all other claims of liability or causes of action arising out of the subject matter of [Joy I]." [Joy I Settlement Agreement at ¶ 2.1]. We have already found that the claims

21

brought in Joy II fall within the scope of the claims brought in Joy I. As such, they are barred by the first clause quoted immediately above. However, even if they did not, in fact, fall within that proscription, at the very least the Joy II claims arise out of the same subject matter as Joy I, thus falling within the confines of the second clause.

As such, this contractual provision conclusively bars Joy's pursuit of Joy II, providing another alternative basis on which to dismiss the Complaint in Joy II.

## IV. CONCLUSION

For each of the foregoing reasons, we grant NARCO's motion to dismiss, with prejudice. An appropriate order will be filed contemporaneously with this opinion.

22

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOY TECHNOLOGIES INC. and    )
JOY MM DELAWARE INC.,         )
        Plaintiffs,           )
                              )
    v.                        )    Civil Action No. 12-0144
                              )
NORTH AMERICAN REBUILD        )
CO., INC.,                    )
                              )
        Defendant.            )

ORDER

AND NOW, this 15th day of May 2012, IT IS HEREBY
ORDERED that North American Rebuild Co., Inc.'s motion to
dismiss [doc. no. 14] is GRANTED. The Complaint is hereby
dismissed, with prejudice.

The Clerk of Court is directed to mark this case
CLOSED.


                    BY THE COURT,


                    s/Gary L. Lancaster, C.J.
                    Hon. Gary L. Lancaster,
                    Chief United States District Judge


cc: All Counsel of Record